AO 106 (Rev. 04/10)  Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

MAR 23 2016

MATTHEW J. DYKMAN
CLERK

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Please see the following page incorporated by reference. | ) ) ) |

Case No.  16mr225

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A (incorporated by reference).

located in the _____ State _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B (incoporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 (a)(1) | Possession with intent to manufacture, distribute, or dispense, a controlled substance. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brett Finn, Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/23/2016

*Judge's signature*

City and state: Albuquerque NM

Karen B. Molzen, Chief U.S. Magistrate Judge

*Printed name and title*

In the Matter of the Search of:

Apple iPad tablet, Model: A1474, Serial#:  DMQN20F9FK15, silver in color

Apple iPad tablet, Model: A1567, Serial:  DMPNPDLJG5WT, gold in color

Samsung cell phone, Model: SM-B311V, MEID HEX: A0000048F28840, blue in color

Samsung cell phone, Model: SM-B311V, MEID HEX: A0000048DEA57D, blue in color

LG cell phone, Model: LG-H631, Serial:  511CYFT690139, silver in color

Motorola cell phone, "4G LTE," Verizon brand, Model/Serial unknown, black in color

" Following "
Page

KBM

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE AND DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Apple iPad tablet, Model: A1474,<br>Serial#:  DMQN20F9FK15, silver in color<br><br>Apple iPad tablet, Model: A1567,<br>Serial:  DMPNPDLJG5WT, gold in color<br><br>Samsung cell phone, Model: SM-B311V,<br>MEID HEX: A0000048F28840, blue in color<br><br>Samsung cell phone, Model: SM-B311V,<br>MEID HEX: A0000048DEA57D, blue in color<br><br>LG cell phone, Model: LG-H631,<br>Serial:  511CYFT690139, silver in color<br><br>Motorola cell phone, "4G LTE,"<br>Verizon brand, Model/Serial unknown, black<br>in color<br><br>as more fully described in Attachment A,<br>incorporated herein by reference.<br><br>CURRENTLY LOCATED AT HOMELAND<br>SECURITY INVESTIGATIONS,<br>ALBUQUERQUE OFFICE EVIDENCE<br>LOCKER, 5441 Watson Dr. SE, Albuquerque,<br>New Mexico 87106.<br><br>(SANDRA COOK / JEFFREY<br>BURLINGAME) | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Brett Finn being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal
Rules of Criminal Procedure for a search warrant authorizing the examination of property—an
electronic device described in Attachment A—which is currently in law enforcement possession,
and the extraction from that property of electronically stored information described in
Attachment B.

2.      I, Brett Finn, am employed as a Special Agent by the Department of Homeland
Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations
(HSI), Border Enforcement Security Task Force, Albuquerque, New Mexico (BEST/ABQ) and
have been employed in this position since June 2010.  I am an investigative law enforcement
officer of the United States, and I am empowered by law to conduct investigations and make
arrests for felony offenses.  I have been a federal law enforcement officer for over five years.

3.      I successfully completed eleven weeks of Criminal Investigator Training (CITP),
and the Immigration and Customs Enforcement Special Agent Training (ICE-SAT) at the
Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia.  I hold a Bachelor's
Degree in Criminal Justice and a Master's Degree in Criminal Justice and Criminology from
Sam Houston State University in Huntsville, Texas.

4.      As a HSI Special Agent, I am authorized and presently assigned to investigate
violations of Title 21, United States Code, Section 841 and other violations of federal law.  I
have also acquired knowledge and information about such offenses, and the various means and
methods by which they are furthered from numerous sources, including formal and informal
training from other law enforcement officers, investigators, and Special Agents; interviews of
informants and arrestees, and interviews of other knowledgeable individuals.

5.      This affidavit is based upon information I have gained from my investigation, my personal observations, training and experience, as well as upon information related to me by other individuals, including law enforcement officers.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, this affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The property to be searched, hereinafter the "DEVICES," includes:  Apple iPad tablet, Model: A1474, Serial#:  DMQN20F9FK15, silver in color; Apple iPad tablet, Model: A1567, Serial#:  DMPNPDLJG5WT, gold in color; Samsung cell phone, Model: SM-B311V, MEID HEX: A0000048F28840, blue in color; Samsung cell phone, Model: SM-B311V, MEID HEX: A0000048DEA57D, blue in color; LG cell phone, Model: LG-H631, Serial#: 511CYFT690139, silver in color; Motorola cell phone, "4G LTE," Verizon brand, Model/Serial unknown, black in color.  The DEVICES are currently located at Homeland Security Investigations, Albuquerque Office Evidence Locker, 5441 Watson Dr. SE, Albuquerque, NM 87106.

7.      The applied-for warrant would authorize the forensic examination of the DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELAVANT STATUTES

8.      This investigation concerns alleged violations of 21 U.S.C. § 841.

3

9.     21 U.S.C. § 841 (a) (1) prohibits any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, to wit; a mixture or substance containing a detectable amount of methamphetamine, 50 grams or more.

## PROBABLE CAUSE

10.     On September 10, 2015, a federal grand jury returned a one count indictment alleging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in D.N.M. 15-CR-3224 WJ.  On September 11, 2015, a federal arrest warrant was issued for Sandra COOK based on this indictment.

11.     At approximately 12:45 pm, HSI Agents and Detectives with Bernalillo County Sheriff's Department served an arrest warrant at the residence of 10819 Habanero Way SE, Albuquerque, NM  87123, for Sandra COOK, a federal fugitive whom I had probable cause to believe presently resided at the residence.

12.     Upon entering 10819 Habanero Way SE, Albuquerque, NM  87123, Agents located fugitive Sandra COOK standing near a dining table, and they observed Jeff BURLINGAME standing near the kitchen. COOK was arrested based on her federal warrant, which was for violation of 21 U.S.C. § 841.

13.     On February 24, 2016, at approximately 1655 hours, the Honorable U.S. Magistrate Judge Steven Yarbrough signed a search warrant for 10819 Habanero Way SE, Albuquerque, NM  87123, pursuant to an investigation of 21 U.S.C. § 841.  At approximately

4

1700 hours, HSI Special Agents and Detectives with Bernalillo County Sheriff's Department

served the search warrant at 10819 Habanero Way SE, Albuquerque, NM 87123.

14.     In plain view, HSI Special Agent J. Harrison saw a black and yellow Dewalt tool

bag on the dining table.  This tool bag was located approximately 4 feet from where COOK was

observed when Agents entered the residence.

15.     At the dining room table where Cook was found, there also was a computer and

keyboard.  To the left of the keyboard was a glass pipe with black residue suggesting

paraphernalia.  There also was a small torch-type lighter and crystal dust-like items near the pipe,

which is where agents first saw Cook. The pipe with black residue was located on a paper plate

surrounded by other residue.  Based on my training and experience, I know that this style of pipe

is sometimes used to smoke methamphetamine.

16.     Inside the open tool bag, Agent Harrison saw a crystalline substance in a plastic

ziplock bag in plain view.  Subsequent to the search warrant, Agent Harrison discovered the

substance had a gross weight of approximately 460 grams.  This substance field tested positive

for the properties of methamphetamine.   In my training and experience, I recognize this is an

amount for distribution.  Inside the tool bag, Agent Harrison also discovered approximately

$1,489.00 in U.S. currency, which he recognized as bulk cash drug proceeds.

17.     Inside a wallet in the tool bag, Agent Harrison discovered a Visa card bearing the

name of Jeffrey BURLINGAME as well as a New Mexico driver's license of Sandra COOK.

Inside the tool bag, Agents also found a large, loose quantity of small rubber bands of the same

size.  In my training and experience, drug traffickers utilize such rubber bands for organizing

5

U.S. currency from drug proceeds.  Inside the bag, Agents also found a scanner / debugger which is used for identifying communication signals, like an audio wire on an undercover agent.

18.     In my training and experience, when illegal drugs are found with multiple identifications, that means there are likely multiple individuals involved in a conspiracy to traffic the drugs.  Part of my search of DEVICES will include looking for other potential co-conspirators.

19.     During the search warrant, Agents found the Apple iPad tablet, Model: A1474, Serial#:  DMQN20F9FK15, silver in color, located on the dining table, approximately two feet from the tool bag, which contained the 460 grams of suspected methamphetamine.  Next to this iPad tablet, I observed in plain view the clear pipe with black residue, located approximately 2 feet from where COOK was standing.

20.     During the search warrant, Agents found the LG cell phone, Model: LG-H631, Serial:  511CYFT690139, silver in color (a wireless telephone), and the Motorola cell phone, "4G LTE," Verizon brand, Model/Serial unknown, black in color (a wireless telephone), on a kitchen counter, approximately 6 inches apart.  These cell phones were located approximately eight feet from the tool bag, which contained the 460 grams of suspected methamphetamine.

21.     During the search warrant, Agents found the Apple iPad tablet, Model: A1567, Serial:  DMPNPDLJG5WT, gold in color, on the coffee table in the living room.  Also, in the living room, Agents found the Samsung cell phone, Model: SM-B311V, MEID HEX: A0000048F28840, blue in color (a wireless telephone); and a Samsung cell phone, Model: SM-B311V, MEID HEX: A0000048DEA57D, blue in color (a wireless telephone).

6

22.    According to a reliable source of information, COOK has historically maintained detailed information of her drug trafficking activities on a computer, to include information about dates, times, locations, quantities, and debts related to drug trafficking activities.  Based on my training and experience, I know that drug traffickers also utilize other electronic devices such as cell phones and tablets to facilitate drug trafficking.

23.    According to a separate, reliable source of information, COOK has historically engaged in video chatting (e.g., Skype) with her source of supply for drugs.  Based on my experience and research, I believe each of the DEVICES (except the two Samsung Model SM-B311V cellphones) are capable of video chatting with their respective front-facing cameras.

24.    New Mexico State employment and business registration records reveal neither Sandra COOK nor Jeffrey BURLINGAME has had any reported income since the second quarter of 2011.  This makes it more likely that they have a criminal livelihood, and thus any recent financial records on the DEVICES are likely related to their drug trafficking activities.

25.    Each of the DEVICES includes an integrated screen, which can retain latent fingerprints on its surface.  I believe the examination of the DEVICES for latent fingerprints will indicate who possessed and/or used the DEVICES.

26.    The DEVICES are currently in the lawful possession of the Homeland Security Investigations.  The DEVICES came into the Homeland Security Investigations' possession as they were seized as evidence during the above mentioned search warrant.  Therefore, while the Homeland Security Investigation's might already have all necessary authority to examine the DEVICES, I seek this additional warrant out of an abundance of caution to be certain that an

7

examination of the DEVICES will comply with the Fourth Amendment and other applicable laws.

27.     The DEVICES are currently in storage at Homeland Security Investigations, Albuquerque Office Evidence Locker, 5441 Watson Dr. SE, Albuquerque, New Mexico 87106. In my training and experience, I know that the DEVICES have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the DEVICES first came into the possession of the Homeland Security Investigations.

28.     As a Special Agent with HSI my primary duties include, but are not limited to, the investigation into violations of the Controlled Substances Act, Title 21.  Based on my experience and training, I know the following:

a. Individuals who traffic controlled substances will often use electronic devices to communicate and facilitate their drug trafficking activities.

b. Individuals who deal in drug trafficking will often use electronic devices to store contact information related to those also involved in drug trafficking activities, to include names, addresses, phone numbers, and other identifying information of customers and suppliers.

c. Drug traffickers often use electronic devices to communicate types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.  Also, they often use coded language in their communication on electronic devices to in an attempt to conceal their illegal activities from law enforcement.

8

d.  Individuals involved in drug trafficking will often store photographs of evidence of crimes in their electronic devices, to include photos of drugs, drug proceeds, and firearms possessed while drug trafficking.

e.  Individuals involved in drug trafficking often possess electronic devices that contain information related to drug proceeds and drug debts, to include bank account numbers, wire transfer information, and other financial records.

f.  Individuals involved in drug trafficking often possess electronic devices that contain information about their movement, to include travel plans and addresses involving illegally transporting controlled substances and drug proceeds.

29.    For the reasons above, I believe that the electronic DEVICES will contain evidence of violations of 21 U.S.C. § 841.

## TECHNICAL TERMS

30.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless

9

telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or

10

miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data

11

and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

     f.   Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

     g.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

31.     Based on my training, experience, and research, I believe the Apple iPad tablet, Model: A1474, Serial#: DMQN20F9FK15, silver in color; the Apple iPad tablet, Model: A1567,

Serial:  DMPNPDLJG5WT, gold in color, are both "tablets" as defined above.  I believe they

have the capability of "internet" access and also have some of capabilities of a "wireless

telephone," "digital camera," "portable media player," "GPS," and "PDA," as defined above.

32.     Based on my training, experience, and research, I believe the LG cell phone,

Model: LG-H631, Serial:  511CYFT690139, silver in color; and the Motorola cell phone, "4G

LTE," Verizon brand, Model/Serial unknown, black in color, are both "wireless telephones" as

defined above.  I believe they have the capability of "internet" access and also have some of

capabilities of a "digital camera," "portable media player," "GPS," and "PDA," as defined

above.

1.     Based on my training, experience, and research, I believe the Samsung cell phone,

Model: SM-B311V, MEID HEX: A0000048F28840, blue in color, and the Samsung cell phone,

Model: SM-B311V, MEID HEX: A0000048DEA57D, blue in color, are both "wireless

telephones" as defined above.  I believe they have the capability of email and may also have

some of the capabilities of a "digital camera," "portable media player," "GPS," and "PDA," as

defined above.

2.     In my training and experience, examining data stored on devices of this type can

uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

3.     Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

    4.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICES was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICES because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is

14

evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.   I know that when an individual uses an electronic device to facilitate drug trafficking, the individual's electronic device will generally serve both as an instrumentality for committing the crime (e.g., coordinating the movement of illegal controlled substances and/or drug proceeds)), and also as a storage medium for evidence of the crime (e.g., maintaining records of the movement of illegal controlled substances and/or drug proceeds). The electronic DEVICES are likely an instrumentality of the crime because the DEVICES were likely used as a means to facilitate the criminal offense. The electronic DEVICES are also likely to be storage mediums for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

5.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICES consistent with the warrant. The examination may require authorities to employ techniques,

15

including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the DEVICES to human inspection in order to determine whether it is evidence

described by the warrant.

6.      *Manner of execution.*  Because this warrant seeks only permission to examine

DEVICES already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises.  Consequently, I submit there is probable cause

for the Court to authorize execution of the warrant at any time in the day or night, and that

evidence of the listed crime will be found on the DEVICES.

## CONCLUSION

7.      I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the DEVICES described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

Brett Finn
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on March 23 , 2016

Honorable Karen B. Molzen
CHIEF UNITED STATES MAGISTRATE JUDGE

16